

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Railroad Commission of Texas
Austin, Texas

Gentlemen:

Opinion No. 0-3611-A
Re: Validity of "grandfather"
provision in H.B. 351, 47th
Legislature, and construc-
tion to be placed thereon.

  In our Opinion No. 0-3611 are copied twenty ques-
tions theretofore submitted by you for our opinion on H.B.
351, 47th Legislature. We answered questions 19 and 20, but
requested leave to defer answering the first 18 questions
until the Supreme Court should dispose of the case of Rail-
road Commission v. T. & P. Ry. Co., which is now pending be-
fore that Court, and which will have an important bearing on
these questions. However, we wrote you that if the need to
determine the applications filed under the so-called "grand-
father" provision should become pressing we would endeavor
to give you our opinion as to the proper course to pursue.
We find that the holders of specialized motor carrier certi-
ficates will not be liable for the gross receipts tax levied
in Article 14 of H.B. 8, 47th Legislature, but that special
commodity carriers are liable for the tax. Hence, the hold-
ers of special commodity permits who have filed application
to convert into specialized motor carrier certificates are
insistent upon having their applications disposed of. Under
the circumstances we think they are justified in requesting
that the Commission take action on their applications, with-
out awaiting the decision of the Supreme Court in the T. & P.
case.

  Accordingly, in response to your further request
of July 7, 1941, we will answer all your first 18 questions
except No. 10. We refer to our Opinion No. 0-3611 for a
copy of such questions, without repeating them.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Referring again to the T. & P. case, we mention anew that the Supreme Court granted a writ of error, indicating doubt in the minds of the Supreme Court as to the correctness of the opinion of the Court of Civil Appeals. If the Court of Civil Appeals was wrong in striking down the Hunter permit in the T. & P. case, and if the same was valid, there can be no doubt but that the provision in H.B. 351 authorizing the conversion of special commodity permits into specialized motor carrier certificates is valid and applicable to the permits under discussion. Furthermore, there can be little doubt but that the legislature had in mind the conversion of special commodity permits in connection with the granting of which there had been no hearing on the issue of convenience and necessity into specialized motor carrier certificates. This statement is made in view of the fact that the Commission never did hear evidence on that issue on any applications for special commodity permits, but on the contrary had granted all such permits as had been granted without hearing testimony on that point. In other words, the legislature clearly meant to grant specialized motor carrier certificates to the holders of special commodity permits, regardless of the fact that there had been no hearings on convenience and necessity prior to the issuance of the permits.

Clearly the statute does not contemplate an inquiry as to what commodities were actually being transported by a given carrier on January 1, 1941, and to make the extent of authority in a replacing specialized motor carrier certificate hinge on the commodities actually being handled at that time, rather than looking to the special commodity permit itself, would be reading something in the statute which is not there. While the right to a replacing specialized motor carrier certificate depends upon the special commodity permit held by the operator on January 1, 1941, rather than upon the services actually being rendered at that time, and on that account the replacing certificate differs from our idea of what is generally understood is a "grandfather" certificate, nevertheless for want of a better short descriptive term we shall refer to them by that name.

We believe the above constitutes a sufficient answer to your questions 1, 2, 2A, 3, 5, 6, 7 and 11.

Railroad Commission of Texas, page 3

Answering your questions Nos. 9, 12, 13 and 14, it is our opinion, at least during the present status of the T. & P. case, supra, that the Railroad Commission should assume the validity of the grandfather provision, and that upon proper application the Railroad Commission should issue specialized motor carrier certificates carrying authority equal to the authority embodied in the old special commodity permits, both as to commodities carried and areas to be served, and without reference to whether such carriers were actually exercising all the rights of their permits on January 1, 1941, or not, subject to what we shall presently say on the question of abandonment.

We shall now consider your eighth question. In Section 12(b) of Article 911b, it is provided that the Commission may, upon notice and hearing, revoke, suspend or modify any certificate or permit, where it shall be found that the "certificate or permit holder has discontinued operation," etc. Where the circumstances indicate that a permit has been abandoned, we suggest that the most orderly procedure would be for the Commission to proceed under Section 12(b) and if there has been an abandonment, then to enter an order of cancellation or revocation, before hearing any grandfather application pertaining to such permit. If there has been an abandonment of operations and the Commission revokes the permit, in our opinion it could then dismiss or deny the application for a grandfather certificate.

We can hardly undertake to answer your tenth question until the Supreme Court takes action in the T. & P. case.

What we have already said leads to a negative answer to your fifteenth question. As we understand you, the permits do not stand suspended, the permit holder simply being authorized to suspend operations under the permit for a limited time. It is our opinion that during such a period of authorized suspension of service the permit itself is in force and effect.

We now address ourselves to the various subdivisions of your sixteenth question. (a) Not unless ordered by the

71

Commission. (b) No. (e) Not necessarily, depending upon the Commission's order. (d) The Commission could so allow.

Replying to your seventeenth question, it is our opinion that if the authority embodied in the permit has been amended since January 1, 1941, the replacing certificate should carry the authority given in the amended permit whether the amendment increased or decreased the authority theretofore conferred. (Last clause in Section 5a(b)).

We will now address ourselves to your question No. 18. Heretofore, it has been permissible for a person to hold and operate both a special commodity permit and a contract carrier permit. It has not been lawful to hold a special commodity permit or contract carrier permit and at the same time a common carrier certificate. Art. 911b, Sec. 6-bb, V.A.C.S. The present Act expressly forbids the issuance of a specialized carrier certificate to one holding a common carrier certificate. This Act does not itself prohibit the issuance of a specialized carrier certificate to one holding a contract carrier permit. Considering the fact that the specialized carrier will be conducting an operation quite similar to that heretofore performed by the special commodity carrier, who was not prohibited from also having a contract carrier permit, we are led to believe that it was not intended by the 47th Legislature for Sec. 6-bb, of Art. 911b, to have the effect of forbidding a specialized carrier from also holding a contract carrier permit. We are confirmed in this thought by the grandfather provision in H.B. 351 directing the issuance of specialized carrier certificates to special commodity carriers, not excepting those who also have contract carrier permits. Your eighteenth question we therefore answer in the affirmative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant

GRL:db

APPROVED JUL 21, 1941

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN